UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSICA MAXWELL, et al.,

        Plaintiffs,

                                       Civil Case No. 18-12585

v.                                Honorable Linda V. Parker

FCA US, LLC, et al.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT FCA US LLC'S MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from a fatal motor vehicle accident on August 20, 2015, in DeSoto County, Mississippi.  On that date, Robert C. Maxwell was driving his 2008 Chrysler Town and County Minivan down Interstate 55 when, at 75 miles per hour, the minivan plowed into the back of a tractor-trailer.  Jessica Maxwell, Mr. Maxwell's daughter and the personal representative and executor of his estate, along with Mr. Maxwell's four other children (collectively "Plaintiffs"), filed this lawsuit on August 19, 2018, claiming that a defect in the design of the minivan's ignition caused the accident.  Plaintiffs assert three product liability claims under Mississippi and/or Michigan Law and negligence in connection with the recall of the defective ignition.

The matter is presently before the Court on Defendant FCA US, LLC's Motion for Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 50.)  The motion has been fully briefed.  (ECF Nos. 51, 52.)  The Court held a hearing with respect to FCA's motion on March 23, 2022.

## I.     Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

2

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.    Factual and Procedural Background

Most of the relevant facts are not in dispute. Mr. Maxwell purchased a 2008 Chrysler Town and Country Minivan in August 2014.[1] On August 20, 2015, just before 1:00 p.m., he was driving 75 m.p.h. southbound on I-55 in DeSoto County, Mississippi, when the minivan crashed into the rear of a tractor trailer which was stopped in traffic in the right lane. Approximately ten seconds before the collision, Mr. Maxwell used the left lane to pass a United Parcel Service tractor trailer and then returned to the right lane. (Johnson Dep. at 43, ECF No. 51-2 at Pg ID 516.)

The driver of the UPS tractor trailer, Danny Johnson, observed that Mr. Maxwell was not asleep, was in control of the minivan, and was driving straight and not weaving across the lines. (*Id.* at 44-45, Pg ID 517-18.) The weather was clear, the ground was dry, and the sun was directly overhead. (*Id.* at 35, Pg ID

---

[1] The manufacturer of the minivan, Chrysler LLC, filed for bankruptcy in 2009. (Answer ¶ 15, ECF No. 10 at Pg ID 84.) The entity which purchased substantially all of its assets and assumed certain liabilities eventually became named FCA US LLC. (*Id.*)

3

514; *see also* Police Report, ECF No. 51-8 at Pg ID 584.)  The minivan's battery was ejected onto the pavement in the collision.  (Johnston Dep. at 91-92, ECF No. 51-3 at Pg ID 525-26.)  Mr. Maxwell died at the scene.  (Police Report, ECF No. 51-8 at Pg ID 585, 588.)

The minivan was towed to a garage or salvage yard (*id.* at Pg ID 589), where Craig Williams, who is married to Plaintiff Anna Florence, inspected it in April 2017 (Answer to Interr. No. 3, ECF No. 52-2 at Pg ID 641).  According to Plaintiffs' June 3, 2019 Answers to FCA's Interrogatories, Mr. Williams took video and photographs of the vehicle, which showed the damage caused by the accident.  (*Id.*)  They also showed that the ignition was in the accessory (ACC) position with no key FOB.  (*Id.*)  Williams found the key FOB under the driver's side seat.  (*Id.*)  The position of the ignition and the location of the key FOB also were asserted as facts in Plaintiffs' Complaint, dated August 19, 2018.  (Compl. ¶¶ 47, ECF No. 1 at Pg ID 7.)

Several months before the accident, in late May 2015, recall notices regarding a defect in the Wireless Ignition Node (WIN) Module for the minivan had been sent to Mr. Maxwell at his home address.  (Shute Decl. ¶¶ 5-8, ECF No. 50-2 at Pg ID 453.)  According to Mr. Maxwell's fiancé, Betty Strachan, who lived with Mr. Maxwell at the time, he received at least two recall notices.  (Strachan

Dep. at 38-41, ECF No. 50-4 at Pg ID 462-64.)  Ms. Strachan mentioned the

notices to Mr. Maxwell, as she was concerned, but he "sloughed [them] off."  (*Id*.)

According to the notices, there is "a defect . . . in certain 2009 and 2010

model year . . . Chrysler Town and Country vehicles." (Recall Notice, ECF No.

50-3 at Pg ID 459.)  "The problem is" that the WIN Module "may have

unintentional movement of the Frequency Operated Button Ignition Key (FOBIK)

from the "ON" to the "Accessory" position while driving" which "could cause

unintended engine shut off and increase the risk of a crash." (*Id.*)  The notice

advised vehicle owners to contact their dealer "right away" to schedule an

appointment to repair the vehicle free of charge.  (*Id*.)  The National Highway

Traffic Safety Administration website reflected that the repair had not been made

to Mr. Maxwell's minivan.  (Salmon Report at 3, ECF No. 52-6 at Pg ID 700.)

Plaintiffs allege the following claims against FCA in their Complaint:

> I)  Wrongful death and product liability under Mississippi Code Annotated §§ 11-7-13 and 11-1-63 and/or Michigan Compiled Laws §§ 600.2922 and 600.2946;

> II)  Product liability under Mississippi Code Annotated §§ 11-1-63 and/or Michigan Compiled Laws §§ 600.2946(2), (3) and 600.2949a;

> III)  Breach of implied warranty of fitness; and

> IV)  Negligent recall.

5

(Compl., ECF No. 1.)  In support of each claim, Plaintiffs allege that "the defective and unreasonably dangerous ignition" in the minivan "slipped from the on position to the accessory or off position causing the engine to stall without warning and causing the loss of the [m]inivan's power steering and brakes" and thereby the accident which killed Mr. Maxwell.  (*Id.* ¶¶ 41, 45, Pg ID 6-7.)  All claims, except the negligent recall claim, are asserted against FCA and Does 1 through 25.  Plaintiffs assert their negligent recall claim only against FCA.

At the motion hearing, Plaintiffs' counsel indicated that it was determined early on that FCA is the only defendant and that "there are no Does."  Plaintiffs never dismissed the named Doe defendants but, based on counsel's indication, the Court is *sua sponte* doing so now.

FCA seeks summary judgment with respect to all of Plaintiffs' claims in its pending motion.  In response to the motion, Plaintiffs "do not oppose dismissal of their negligent recall claim (Count IV)."  (Resp. at 14, ECF No. 51 at Pg ID 505.)

## III.   Applicable Law & Analysis

Whether pursuing their product liability claims under Michigan or Mississippi law, [2] Plaintiffs must prove *inter alia* that the minivan's ignition was

---

[2] FCA contends that Plaintiffs improperly assert their claims under the laws of both States and that a choice of law analysis will be needed if Plaintiffs' claims survive summary judgment.  (*See* Br. in Support of Mot. at 1 n.1, ECF No. 50 at Pg ID

"defective" and that this defect caused Mr. Maxwell's injury.  *Prentis v. Yale Mfg., Co.*, 365 N.W.2d 176, 186 (Mich. 1984) (Michigan law); *Skinner v. Square D Co.*, 516 N.W.2d 475, 479 (Mich. 1994) (same); *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F. Supp. 2d 752, 768 (E.D. Mich. 2010) (same); *Williams v. Bennett*, 921 So.2d 1269, 1273 (Miss. 2006) (Mississippi law); Miss. Code. Ann. § 11-1-63(a). FCA argues that Plaintiffs' claims—which are all premised on a defective design—fail because Plaintiffs lack evidence establishing a defect and causation. FCA maintains (and Plaintiffs do not contend otherwise) that under Michigan and Mississippi law, expert testimony is required to satisfy Plaintiffs' burden of proving both of these elements.  *See Swartz v. Proctor & Gamble Mfg. Co.*, No. 16-cv-12396, 2018 WL 2239558, at *5 (E.D. Mich. May 16, 2018) (quoting *Hendrian v. Safety-Kleen Sys.*, No. 08-cv-14371, 2015 WL 4770966, at *5 (E.D. Mich. Aug. 13, 2015)) (explaining that, under Michigan law, "to satisfy the 'heavy burden' of a design defect claim, 'expert testimony is required' to demonstrate the existence of a reasonable alternative design that would satisfy the elements of a plaintiff's claim"); *Lawrenchuk v. Riverside Arena, Inc.*, 542 N.W.2d 612, 614-15 (Mich. Ct. App. 1995) (granting summary disposition in favor of the defendant on Michigan negligent design claim where the plaintiff failed to produce admissible

---

424.)  For purposes of the motion, however, FCA assumes that Mississippi and Michigan law apply and argues that the claims fail under both.

expert testimony); *Grant v. Ford Motor Co.*, 89 So.3d 655, 675 (Miss. Ct. App. 2012) (providing that expert testimony is required under Mississippi law to show proof of a defect and causation); *Hammond v. Coleman Co.*, 61 F. Supp. 2d 533, 542 (S.D. Miss. 1999) (concluding that without the testimony of its expert, the plaintiff failed to provide proof to support his design defect claim under Mississippi law).  Whether such proof is required through expert testimony or some other form of competent evidence,[3] Plaintiffs fail to satisfy their burden in response to FCA's summary judgment motion.

### A.    Defect

Under Michigan law, "[a] manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury."  *Prentis*, 365 N.W.2d at 186.  Michigan courts have "accepted the social policy rationale that those injured by defective products should be compensated for their injuries . . ., [but] they have

---

[3] In the many cases holding that the plaintiff's claims failed due to the lack of expert testimony, this was the only testimony offered to satisfy the plaintiff's burden of proof and the courts excluded the testimony or found the testimony insufficient.  The Court believes that there may be instances where competent evidence, but not necessarily expert evidence, provides sufficient proof.  *See, e.g., Rodger v. Ford Motor Co.*, No. 2008 WL 4646140, at *3 (Mich. Ct. App. Oct. 21, 2008) (citing *Holloway v. Gen. Motors Corp.*, 271 N.W.2d 777, 784 (Mich. 1978)) (explaining that, under certain circumstances, the existence of a defective condition may be inferred from circumstantial evidence and without the benefit of expert testimony"); *Holloway*, 271 N.W.2d at 784 ("A manufacturing defect can be proved by circumstantial evidence without expert opinion testimony.").

never gone so far as to make sellers insurers of their products and thus absolutely liable for any and all injuries sustained from the use of those products." *Id.* at 181. Thus, a manufacturer's duty in designing products extends only to avoiding "unreasonable" risks. *Id.* at 186 (citing *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372, 377 (Mich. 1982)); *Owens*, 326 N.W.2d at 379 (internal quotation marks and citation omitted) ("Manufacturers are not insurers that in every instance and under all circumstances no injury will result from the use of their products.").

As such, under Michigan law, a plaintiff alleging a products liability or breach of implied fitness claim under a design defect theory must prove "that the product was not reasonably safe for its foreseeable uses and that a risk-utility analysis favored a safer design." *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 515-16 (6th Cir. 2008). The "plaintiff must show that (1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a 'feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users.'"[4] *Id.* (quoting Mich. Comp. Laws § 600.2946(2)).

---

[4] The Michigan courts have required a plaintiff to satisfy a six-factor utility test to make this showing. *See Croskey*, 532 F.3d at 516) (quoting *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000) (citing *Reeves v. Cincinnati, Inc.*, 439 N.W.2d 326, 329 (Mich. Ct. App. 1989)). Neither party has addressed this test in their briefs and counsel failed to confirm at the motion hearing that the test applies. The Court therefore will not focus on it here.

The only expert witness Plaintiffs have identified, Sean Shideh, testified that he lacked evidence of a defect in the minivan at the time of the crash.  (Shideh Dep. at 124-25, ECF No. 50-6 at Pg ID 473-74.)  The Court believes, however, that the ignition recall notice provides competent evidence from which a jury could conclude that the minivan's ignition was "not reasonably safe for its foreseeable uses."[5]  Nevertheless, Plaintiffs do not address, much less offer evidence, to show that a 'feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users."  While Plaintiffs assert that the replacement WIN module and FOBIK's contemplated in the recall notice reflect a feasible, alternative design (*see* Resp. Br. at 9-10, ECF No. 51 at Pg ID 500-01), this does not demonstrate that there was a feasible alternative design *at the time* the minivan left FCA's control. That is the relevant focus.  *See* Mich. Comp. Laws § 600.2946(2) ("In a product liability action . . . for harm allegedly caused by a production [e.g., design]

_____

[5] FCA's counsel argued at the hearing that the recall notice only showed the potential for a defect and not that all ignition switches in the identified models in fact contained the defect.  While this might be a strong argument in a manufacturing defect claim, it is not persuasive where the design of the product is claimed to be defective.

defect,[6] the manufacturer or seller is not liable unless the plaintiff establishes . . . that, according to generally accepted production practices *at the time the specific unit of the product left the control of the manufacturer* or seller, a practical and technically feasible alternative production practice was available . . .") (emphasis added).

Under Mississippi law, a plaintiff similarly must show that "an alternative design could have been practically adopted *at the time of sale . . .*" *Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006) (emphasis added); *see also Lim v. Ethicon*, 519 F. Supp. 3d 380, 385 (S.D. Miss. 2021) (citing *Williams*, 921 So. 2d at 1275) (explaining that to satisfy her claim, the plaintiff "must . . . offer a feasible design alternative" and "[t]he reasonable alternative design must have been available at the time of sale . . .").

Absent evidence of a feasible alternative design at the time the ignition left the manufacturer's control, Plaintiffs' claims fail as a matter of law.

## B.    Causation

As indicated, to prevail under a design defect theory under Michigan or Mississippi law, the plaintiff must show that the product's defect proximately caused the injuries sustained.  *Skinner*, 516 N.W.2d at 478, 479; Miss. Code Ann.

---

[6] "Production" is defined to mean, *inter alia*, manufacture and design.  Mich. Comp. Laws § 600.2945(*i*).

11

§ 11-1-63(a).  To prove proximate cause, the plaintiff must demonstrate cause in fact, "showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred" and legal cause, "examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."  *Skinner*, 516 N.W.2d at 479; *Logan v. Ford Motor Co.*, 293 So.3d 840, 844-45 (Miss. Ct. App. 2019) (citations omitted).  FCA argues, and the Court agrees, that Plaintiffs present no evidence—expert or otherwise—to prove that the allegedly defective ignition caused the subject accident.

Plaintiffs rely on Mr. Shideh's testimony to establish causation.  During his deposition in this matter, however, Mr. Shideh testified that he lacked any evidence that the potential for the ignition to switch from the "on" to the "off" or "accessory" position occurred prior to the crash  (Shideh Dep. at 115, 124-25, ECF No. 50-6 at Pg ID 472-74.)  The key FOB, Mr. Shideh acknowledged, could have come out of the ignition due to the force of the crash or could have been removed by first responders to prevent an electrical fire.  (*Id.* at 142-43, 147, Pg ID 477-78.)  Mr. Shideh further testified that he had no evidence of a malfunction of the minivan at the time of the accident.  (*Id*. at 140-41, Pg ID 475-76.)

Nevertheless, Plaintiffs offer an August 1, 2021 declaration by Mr. Shideh in response to FCA's motion, in which Mr. Shideh offers superseding statements purportedly based on "New Evidence" discovered on or about May 14, 2021.

12

(Shideh Decl. ¶ 3, ECF No. 51-4 at Pg ID 530.)  This evidence consists of the photographs of the minivan taken by Mr. Williams in April 2017, showing the ignition between the accessory and off positions and the key FOB's location under the driver's seat.  (*Id*.)  Based on this information, Mr. Shideh opines:

> 4.  *If* the New Evidence is representative of the ignition immediately following the crash, the New Evidence now indicates that the key FOB *may* have moved from the ON position to somewhere between the ACC (accessory) and OFF position prior to the crash.

> 5.  *However*, it is also scientifically possible that the key FOB *may* have moved from the ON position to somewhere between the ACC (accessory) and OFF position as a result of the crash.

> \* \* \*

> 7.  *If* the New Evidence is representative of the ignition immediately following the crash, the New Evidence now indicates that the key FOB *may* have come out of the ignition prior to the crash.

> 8.  *However*, it is also scientifically possible that that the key FOB *may* have come out of the ignition as a result of the crash.

> 9.  *If* the New Evidence is representative of the ignition immediately following the crash, the New Evidence now indicates that the ignition switch recall condition *may* have occurred in this vehicle prior to the crash.

(*Id.* at Pg ID 530-31 (emphasis added).)

FCA objects to Mr. Shideh's declaration on several valid grounds, [7]
including on the basis that the facts supposedly warranting his revised statements
are not, in fact, "new." [8]   But even if the Court overlooked the untimeliness of the
declaration and the inconsistencies between Mr. Shideh's statements in his
declaration and prior testimony, his revised statements do not create a question for
the jury on the issue of causation.   This is because Mr. Shideh's opinions in the
declaration reflect merely hypotheticals and possibilities.

As the Michigan Supreme Court restated in *Skinner*:

> The plaintiff must introduce evidence which affords a
> reasonable basis for the conclusion that it is more likely than

---

[7] FCA first argues that the declaration is inadmissible under Federal Rule of Civil
Procedure 37(c)(1) because it was not timely disclosed, is not based on truly "new
evidence," and Plaintiffs fail to establish that the untimely disclosure was
"substantially justified or is harmless."  FCA next argues that the statements in Mr.
Shideh's declaration should be precluded because they contradict his prior sworn
testimony.  *See Aerel SRL v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006);
*Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001).

[8] As FCA points out, Plaintiffs alleged these facts in their August 19, 2018
Complaint.  (*See* Compl. ¶ 47, ECF No. 1 at Pg ID 7.)  In their June 3, 2019
Answers to FCA's First Set of Interrogatories, Plaintiffs indicated that these facts
(i.e., the position of the ignition and location of the key FOB) were based on an
inspection of the minivan by Mr. Williams in April 2017, at which time
photographs and video were taken.  (*See, e.g.*, Answer to Interrog. No. 2, ECF No.
52-2 at Pg ID 640-42.)  Plaintiffs' counsel in fact stated at the motion hearing that
these facts were pled from the beginning and it was only the photographs,
confirming the facts, that are "new."

not that the conduct of the defendant was a cause in fact of the
result.  A mere possibility of such causation is not enough; and
when the matter remains one of pure speculation or conjecture,
or the probabilities are at best evenly balanced, it becomes the
duty of the court to direct a verdict for the defendant.

*Id*. (quoting *Mulholland v. DEC Int'l*, 443 N.W.2d 340, 350 n.18 (Mich. 1989)).

The Mississippi courts similarly have stated that "the plaintiffs . . . must introduce

evidence which affords a reasonable basis for the conclusion that it is more likely

than not that the conduct of the defendant was a cause in fact of the result.  A mere

possibility of such causation is not enough." *Logan*, 293 So.3d at 845 (quoting

*Rowan v. Kia Motors Am., Inc.*, 16 So.3d 62, 66 (Miss. Ct. App. 2009) (quoting

*Herrington v. Leaf River Forest Prods., Inc.*, 733 So.2d 774, 777 (Miss. 1999)).

"[E]xpert opinion based upon only hypothetical situations is not enough to

demonstrate a legitimate causal connection between a defect and injury." *Skinner*,

516 N.W.2d at 484.

As reflected in the italicized language of Mr. Shideh's declaration quoted

above, he offers only "a mere possibility" that the alleged defect caused the

collision and only hypotheticals of how the accident occurred.  *Skinner*, 516

N.W.2d at 481.  Mr. Shideh describes a second possible explanation for how the

ignition moved from the "ON" position to between the "ACC" and "OFF"

positions and for how the key FOB wound up under the seat—that being, the force

15

of the crash.[9]  This second explanation is not attributable to any action by the manufacturer or seller of the minivan.  As Mr. Shideh states, either explanation is "scientifically possible[.]"  (Shideh Decl. ¶¶ 5, 8, ECF No. 51-4 at Pg ID 530.)  He does not indicate that one scenario is more likely than the other.  In that instance, FCA is entitled to summary judgment.

Plaintiffs' counsel's arguments at the motion hearing are unpersuasive for the same reason.  Counsel argued that the photograph of the ignition in the accessory position "is pretty convincing evidence" that the recall defect occurred and the testimony of eyewitnesses (i.e., that Mr. Maxwell was not sleeping and was not weaving) "defeats other explanations for the accident."  But, in fact, as Plaintiffs' own expert opined, there is an equally plausible explanation for the ejection of the key FOB and the ignition's position—that being the force of a 75 mile per hour crash into a stationary object.  And there are equally plausible explanations for the accident (e.g., simply careless or distracted driving) that are not eliminated by the evidence.

In short, Plaintiffs fail to present evidence to show that it is "more likely than not" that a defect in the ignition caused the accident.  Plaintiffs have shown, at most, only a possibility and that is insufficient to present their claims to a jury.

---

[9] Notably, Mr. Shideh never expressly states that if the key FOB came out of the ignition prior to the crash that this event caused the crash.

## IV.    Conclusion

Plaintiffs abandoned their negligent recall claim (Count IV) in response to FCA's summary judgment motion.  They fail to present evidence to create a question of fact as to whether the minivan's ignition was defective and as to whether any defect caused the collision that killed Mr. Maxwell.  Such proof is required to establish their remaining claims.

This case undoubtedly presents a tragic accident, in which Mr. Maxwell died and Plaintiffs experienced a tremendous loss.  Nevertheless, Plaintiffs have not shown that FCA is liable for those injuries.

Accordingly,

**IT IS ORDERED** that Defendant FCA US, LLC's Motion for Summary Judgment (ECF No. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Defendants Does 1-25 are *sua sponte* **DISMISSED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 24, 2022

17